**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| IN RE WEBVENTION LLC '294 PATENT LITIGATION | : : : : : : : | MDL No. 11-md-2294 |

**MEMORANDUM**

Now pending in this multidistrict patent litigation is defendants'[1] motion to stay pending completion of a reexamination proceeding for the patent-in-suit, United States Patent No. 5,251,294, "Accessing, Assembling, and Using Bodies of Information" (the "'294 patent"), before the United States Patent and Trademark Office ("PTO"). Plaintiffs Webvention LLC and Webvention Group LLC (collectively, "Webvention") have filed a response in opposition to the motion to stay, and defendants have filed a reply. No oral argument is necessary. *See* Local Rule 105.6. For the following reasons, defendants' motion to stay will be granted.

**I.      Background**

At issue in this litigation is the webpage functionality known as a "mouse over" or "preview" that displays a short summary of the information to be found through an internet link when a computer user points the mouse or cursor at the link. (Def.'s Mot. Stay 3, ECF No. 164-1; March 30, 2012 Hearing Transcript ("Hearing Transcript") 12–14, ECF No. 163-5.) Webvention argues

---

[1] The defendants include L. L. Bean, Inc., Nordstrom, Inc., J. Crew Group, Inc., Presidio International, Inc., Macy's Inc., the Coca-Cola Company, the Valspar Corporation, Landstar System, Inc., Landstar System Holdings, Inc. Vitacost.com, Vibrant Media, Inc., Las Vegas Sands Corp., Saks Incorporated, Zale Delaware, Inc., Ralph Lauren Corporation, GNC Holdings, Inc., General Nutrition Investment Company, Sur la Table, Inc., the Huffington Post.com, Inc., and HDR, Inc.,

that this now common functionality is covered by patent '294, which was originally granted in 1993 and expired in October 2010.

### A. Procedural History

In or around late 2009, Webvention acquired the '294 patent from another company, Intellectual Ventures.[2]  (Hearing Transcript 4.)  After acquiring the patent, Webvention began a broad enforcement campaign, demanding a "five-figure licensing fee," (Def.'s Mot. Stay 3), and bringing "four waves of litigation" in the Eastern District of Texas against companies that refused to pay the fee.[3]  (Hearing Transcript 5.)  Webvention filed its first patent infringement case against nineteen defendants in July 2010.  *See Webvention LLC v. Abercrombie & Fitch Co.*, No. 10-253 (E.D. Tex. filed July 20, 2010).  A few months later, Webvention sued another twenty defendants. *See Webvention LLC v. Adidas America Inc.*, No. 10-410 (E.D. Tex. filed Oct. 5, 2010).  In April 2011, Webvention sued another twenty defendants.  *See Webvention LLC v. Allergan, Inc.*, No. 11-225 (E.D. Tex. filed Apr. 19, 2011).  In the "fourth wave," Webvention brought a series of lawsuits filed against individual companies.  (Hearing Transcript 5.)  Separately, dozens of companies preempted infringement suits by bringing declaratory judgment actions against Webvention in the District of Delaware.  (*Id*. at 5–6.)

On August 18, 2011, counsel for defendants in two of the Texas infringement suits moved to centralize all pretrial proceedings for the various infringement and declaratory judgment actions under the framework for multidistrict litigation provided for by 28 U.S.C. § 1407.  (L.L. Bean's and

---

as well as declaratory judgment plaintiffs Novartis Corporation, the Hearst Corporation, and Marie Claire/Hearst.
[2] On January 31, 2012, Webvention, LLC entered into a patent sale agreement with Webvention Group, LLC, whereby all rights, title, and interest to the patents-in-suit were assigned to Webvention Group as of February 1, 2012.
[3] The defendants contend that the licensing fee requested is significantly less than the attorneys' fees required to litigate a

2

Nordstrom's Mot. Transfer, ECF No. 165-7, at 3.)  On December 15, 2011, the United States Panel on Multidistrict Litigation granted the motion and consolidated both the infringement and declaratory judgment actions into a single multidistrict suit to be transferred to this court.  (ECF No. 1.)  While the parties adverse to Webvention in this current action include both defendants from the infringement actions and plaintiffs from the declaratory judgment actions, for ease of understanding the court will refer to all of these parties as "defendants."

### B. Reexaminations and Motions to Stay

The Patent Act allows any person to anonymously file with the PTO an ex parte request to reexamine "the validity of an existing patent based on the existence of prior art." *Akzenta Paneele Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 483 (D. Md. 2006) (citing 35 U.S.C. § 302).  During a reexamination proceeding, "patent examiners inquire whether a patent was issued in error based on prior art patents or printed publications." *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 373 (4th Cir. 2009) (citing 35 U.S.C. §§ 301–302 (2000)).  "Congress intended reexaminations to provide an important 'quality check' on patents that would allow the government to remove defective and erroneously granted patents." *Id.* at 373 n.29 (quoting *In re Swanson*, 540 F.3d 1368, 1375 (Fed. Cir. 2008)).  For an expired patent such as the '294 patent, the reexamination process concludes with the issuance of a certificate by the PTO, which either cancels the reexamined claims as invalid, confirms the claims as patentable, or does some combination thereof.  35 U.S.C. § 307(a).

On September 22, 2010, and October 29, 2010, anonymous third parties separately requested

---

patent infringement suit.  (Hearing Transcript 14–15, ECF No. 163-5.)

ex parte reexamination of the '294 patent. The PTO granted both requests and merged them into one proceeding. On May 16, 2011, based on these reexaminations, counsel for L.L. Bean moved to stay proceedings in the *Allergan* case in the Eastern District of Texas. (ECF No. 165 Ex. E.) On June 28, 2011, the PTO issued a Notice of Intent to Issue a Reexamination Certificate confirming the claims as patentable. As a result, on July 6, 2011, L.L. Bean subsequently withdrew its motion to stay. (Pl.'s Opp. to Def.'s Mot. Stay 31, ECF No. 165.)

Two months later, on September 19, 2011, Webvention filed an "Information Disclosure Statement" ("IDS"). (ECF No. 164 Ex. K). The IDS included prior art references that Webvention had not previously disclosed. (Def.'s Mot. Stay 7.) Defendants allege that Webvention had been notified of these prior art references in a September 2010 letter from a company that had received a license demand from Webvention, but that Webvention had not disclosed these "critical" references to the PTO until after the substantive portion of the reexamination had concluded. (*Id.* at 7–8.) Defendants also allege that, as a result of belated timing of the IDS, the references were not considered in the final reexamination certificate that issued on October 4, 2011. (*Id.* at 7; December 16, 2011 Order Granting Reexamination, ECF No. 164 Ex. N, at 8–10.)

On October 7, 2011, counsel for one of the original requesting parties submitted a new reexamination request. The new request sought reexamination based on, inter alia, the references Webvention had disclosed in the IDS. On December 16, 2011, the PTO granted the new request, finding the references raised "a substantial new question of patentability" as required for reexamination to proceed under 35 U.S.C. § 303(a). (Def.'s Mot. Stay 9.) On April 20, 2012, defendants in the multidistrict litigation filed the instant motion to stay proceedings pending the outcome of this new reexamination.

**II.    Discussion**

District courts have "inherent power to manage their dockets and stay proceedings . . . including the authority to order a stay pending conclusion of a PTO reexamination." *Akzenta Paneele*, 464 F. Supp. 2d at 484 (quoting *Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988)). "The Court should consider the competing interests of the parties and in particular 'a party must demonstrate a clear case of hardship if there is a danger that the stay will damage the other party.'" *Id.* (quoting *St.-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.,* 436 F. Supp. 2d 252, 253 (D. Mass. 2006)). "Specifically, Courts weigh three factors in determining whether to grant a stay pending patent reexamination by the PTO: 1) the stage of the proceedings; 2) whether a stay would unduly prejudice the nonmoving party; and 3) whether a stay would simplify issues and the trial of the case." *Id.* (citations omitted).  After considering the above three factors, the court finds a stay in this case to be appropriate.

"In assessing the stage of the proceedings, Courts focus on whether a trial date has been set and the degree to which discovery has been completed." *Akzenta Paneele*, 464 F. Supp. 2d at 484 (citation omitted).  Here, no trial date has been set in this court, and discovery has not begun. Webvention does not contend that discovery had begun in any of the underlying cases prior to the MDL consolidation, although a schedule had been set in some cases.  And Webvention does not argue persuasively that defendants unreasonably delayed their motion to stay.  Rather, the court found it necessary to delay the initial organizational meeting in this consolidated case in order to allow for all cases to be transferred in.  (*See* January 13, 2012 Letter to Counsel, ECF No. 23.) Defendants moved for a stay at the earliest possible opportunity subsequent to the consolidation

5

decision of the MDL panel. The early stage of the proceedings thus weighs toward granting a stay.

A stay would not unduly prejudice Webvention. Webvention acknowledges that the previous reexamination took about one year to complete, (Hearing Transcript 7), and the current reexamination was requested in October 2011. Assuming a similar timeframe, a stay pending completion of the current reexamination will only delay the case by approximately four months from the date of this decision. Appeals to the PTO Board of Appeals and Interferences and to the Federal Circuit are possible, though the reexamination is ex parte and therefore defendants in this case would not have standing to appeal any adverse decision. After the final PTO decision only Webvention will be able to decide whether to pursue an appeal or to instead restart any remaining aspect of this litigation. Moreover, given that nearly twenty years already have passed from the date the '294 patent was granted, this relatively short period of time until a PTO decision is likely to be rendered cannot be expected to have a significant effect on the availability of evidence.

Webvention cites two other cases from this district in which the court found undue prejudice and motions to stay were denied, but those two cases are inapposite. Unlike the '294 patent litigation, both of the cited cases involved unexpired patents. In *Mike's Train House, Inc. v. Broadway Ltd. Imports*, the parties were "direct competitors," and the court recognized that in such a situation "it may sometimes be impossible to restore a patentee's original market share after years of infringement." 2011 WL 836673 at *2 (D. Md. Mar. 3, 2011) (citing *Polymer Techs. v. Bridwell*, 103 F.3d 970, 975–76 (Fed. Cir. 1996)). As a result, the court noted, a stay will generally "be prejudicial where . . . the plaintiff and defendant in an infringement suit are direct competitors." *Id*.[4]

---

[4] In addition, the litigation in *Mike's Train House* was significantly further along when the court ruled on the motion to stay. Discovery was "well underway," the parties had filed their joint claim construction statement and claim construction briefs, and a *Markman* hearing was scheduled to take place less than a month from the date of the ruling. *Mike's Train House v. Broadway Ltd. Imports*, 2011 WL 836673 at *2 (D. Md. Mar. 3, 2011).

In *Akzenta Paneele*, the patent *owner* requested a stay during reexamination and prior to expiration of the patent. The alleged infringer in that case argued that delayed litigation would compel it to make a choice between "1) continuing to operate as it has and potentially increasing its liability, or 2) changing its operations and potentially finding out that the labor and cost of changing was not necessary." 464 F. Supp. 2d at 485. In the instant litigation, Webvention is a non-practicing entity and the patent has expired. Thus, there is no similar asymmetric risk to delaying the instant litigation pending reexamination, as only damages are at issue and no additional damages are being incurred.[5]

Finally, the court must consider whether a stay would simplify the issues for trial. "One purpose of the reexamination procedure is to eliminate trial of [an] issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). In considering this factor, the court also considers the likelihood that the reexamination may cancel *all* relevant claims, therefore eliminating the need for *any* further litigation in this court. If litigation proceeds in this court and the PTO subsequently finds all relevant claims to be invalid, such a sequence of events "would represent a significant waste of time and resources." *Akzenta Paneele*, 464 F. Supp. 2d at 486 (citing *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996)).

---

[5] The court is unconvinced by Webvention's argument that *any* stay pending the result of an ex parte reexamination process is "patently prejudicial and unfair." (Opp. 8.) Webvention contends that a stay pending ex parte reexamination unfairly allows the moving party two bites at the same apple, because Congress did not provide for an estoppel effect for ex parte reexaminations as it did for inter partes reexaminations under 35 U.S.C. 315(c). (*Id.*) To the extent this is true, however, *any* ex parte reexamination—no matter when requested—necessarily turns subsequent litigation into a second bite at the same apple. Congress could have addressed concerns about this type of re-litigation in any number of ways, but chose not to; the court is therefore disinclined to second-guess this legislative policy judgment. *Cf. Premier Int'l Assocs. LLC v. Hewlett-Packard Co.*, 554 F. Supp. 2d 717, 725 (E.D. Tex. 2008) (requiring to stipulate to estoppel before

Defendants contend that the sole independent claim at issue in the infringement suits is claim 28. If it is accurate that a final rejection of claim 28 would alone make this entire case moot, then the likelihood that a motion to stay could conserve time and resources is increased. Conversely, if no single claim will determine the outcome of this litigation, then litigation is likely to proceed even if some (but not all) relevant claims are rejected; the simplification of claims factor would then not necessarily weigh heavily either in favor of or against granting a stay. *See Akzenta Paneele*, 464 F. Supp. 2d at 486. Because Webvention has not contested defendant's argument that claim 28 is the only independent claim at issue in this litigation, simplification must be considered more likely in this case, therefore weighing in favor of a stay.

In sum, each of the three factors weighs at least somewhat in favor of granting a stay. Taken together, the factors suggest that a stay at this time will not unfairly damage Webvention's interests. The court understands Webvention's concern that the repeated filing of ex parte reexamination requests and corresponding motions to stay could inappropriately leave patent '294 "forever trapped within an administrative hamster wheel." (Opp. 28.) At present, however, the procedural history of this case does not support that concern. The court will therefore grant defendants' motion.[6]

A separate order follows.

    June 15, 2012                                                   /s/
Date                                                                Catherine C. Blake
                                                                       United States District Judge

---

granting a stay pending ex parte reexamination).
[6] If a mini-*Markman* proceeding is necessary at the conclusion of the stay, the court will consider the parties' proposed schedules further at that time.